# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH KRAEGER,
    Petitioner-,

v.

UNITED STATES OF AMERICA,
    Respondent-.

CRIMINAL ACTION NO. 3:11-CR-00084

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is Petitioner Kenneth Kraeger's ("Kraeger") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 286.) Kraeger was charged with multiple drug and firearms offenses, proceeded to trial, and was found guilty of 4 counts. He was sentenced to 180 months' imprisonment. The Third Circuit affirmed Kraeger's conviction and sentence on appeal. Because the record demonstrates conclusively that he is not entitled to relief, Kraeger's § 2255 motion will be denied without a hearing.

## I. BACKGROUND

Kraeger's conviction was the result of drug and firearms charges stemming from two separate searches of his residence located at 162 Hiller Lane in Blooming Grove Township, Pennsylvania. The first search, executed pursuant to a search warrant on May 28, 2009, was the result of an investigation of possible marijuana cultivation, initiated by a tip from a confidential informant. That search allegedly revealed more than 1,000 marijuana plants, along with marijuana packaged for delivery, growing equipment, three shotguns, and approximately $26,000 in cash. Kraeger was charged with crimes pursuant to Pennsylvania law and was released on bail.

While on bail, on October 24, 2010, Kraeger was stopped for speeding in North Hampton, New Hampshire by the New Hampshire State Police. Kraeger was driving his son's vehicle and his son, Daniel Kraeger, was in the front passenger seat (along with a third party in the back seat). As a result of this stop, the New Hampshire State Police obtained and executed a search warrant for the vehicle on October 25, 2010. This search uncovered marijuana, an electric bill (among other documents), and

an Apple smartphone. A subsequent search warrant obtained additional information from the smartphone. These findings by the New Hampshire State Police were then transmitted to local authorities in Pennsylvania who used the information to obtain administrative subpoenas for United Parcel Post and PPL Electric Utilities. All of these findings then contributed to a second search warrant for Kraeger's residence, executed on November 4, 2010. During that second search, officers allegedly uncovered more than 200 marijuana plants and various pieces of indoor growing equipment.

On March 15, 2011, Kraeger was indicted by a federal grand jury and charged with two counts of violating 21 U.S.C. § 841(a)(1) for marijuana seized from his residence on the two separate occasions. (Doc. 21.) Count One, pursuant to 21 U.S.C. § 841(b)(1)(A)(vii) ("1,000 or more marijuana plants regardless of weight") resulted from the search of his residence conducted on May 28, 2009. Count Two, pursuant to 21 U.S.C. § 841(b)(1)(B)(vii) ("100 or more marijuana plants regardless of weight"), resulted from the November 4, 2010 search.

On March 23, 2011, Kraeger pleaded not guilty to the charges before United States Magistrate Judge Thomas M. Blewitt. On November 21, 2011, Kraeger filed four motions: (1) a motion to suppress evidence found during the May 28, 2009 search of his residence; (2); a motion to suppress evidence found during the November 4, 2010 search of his residence; (3) a motion to suppress evidence destroyed by the government; and (4) a motion to sever counts one and two for trial. On March 19, 2012, the Court denied each of these motions except the motion to suppress evidence uncovered during the November 4, 2010 search, which was held in abeyance until a hearing was held on the matter. After such hearing was held on August 23, 2012, this motion was denied as well.

On September 24, 2013, the Government filed a superseding indictment adding two firearms charges: (1) possession of firearms in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c), and (2) possession of firearms by an unlawful user of controlled substances in violation of 18 U.S.C. § 922(g)(3).

Kraeger filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on December 7, 2016. (Doc. 286.) On December 30, 2016, Kraeger made his "*Miller*" election and chose to have the Court rule on his Motion as filed. (Doc. 288.) On February 3, 2017, with his §2255

Motion pending, the Court received a request from Kraeger to amend his Motion. (Doc. 289.) The amendment sought to add a due process claim based on the Court's denial of a motion for continuance filed by Kraeger prior to his suppression hearing. (*See id.* at 1, 4-5.) The Court granted Kraeger's Motion and directed the Government to file a response to the amended §2255 Motion. (Doc. 291.) On March 7, 2017, the Court received a request from Kraeger to further amend his §2255 Motion. (Doc. 294.) The Court granted Kraeger's Motion and directed the Government to file a response to the second amended §2255 Motion. (Doc. 296.) The Government filed its Brief in Opposition on April 17, 2017. (Docs. 299-306.) Kraeger filed his Reply on June 28, 2017 (Doc. 309). Kraeger's motion pursuant to §2255 is now ripe for disposition.

## II. LEGAL STANDARD

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

Section 2255(b) generally entitles a petitioner to a hearing on their motion:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b). The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. *See United States v. Lilly*, 536 F.3d 190, 195

3

(3d Cir. 2008). In exercising that discretion, the Court must decide whether the petitioner's claims, if proven, would entitle petitioner to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Gov't of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d. Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)); *see also Forte*, 865 F.2d at 62.

## III. DISCUSSION

Kraeger seeks to vacate his sentence pursuant to 28 U.S.C. § 2255 on the basis that (1) his various counsel rendered ineffective assistance during his suppression hearing, trial and appeal, and (2) the District Court abused its discretion in denying his request for a continuance of his suppression hearing.

Kraeger claims his trial counsel was ineffective for (1) failing to properly cross-examine the Government's witnesses at trial; (2) failing to call an expert witness for the defense; (3) failing to seek the exclusion of "obviously tampered with evidence;" (4) failing to assert bad faith on the part of the officers who conducted the 2009 search; and (5) committing ten enumerated errors regarding the firearms charges against Kraeger. He alleges that his suppression counsel was ineffective for (1) failing to properly challenge the two search warrants that led to his arrest and prosecution under Pennsylvania state law in 2009; (2) failing to properly call witnesses, conduct cross-examination, or object to a "blatantly false and prejudicial statement" by the prosecutor during the August 23, 2012 suppression hearing; and (3) failing to immediately appeal the District Court's denial of his multiple motions to suppress evidence and motion to continue the suppression hearing. Finally, Kraeger argues that his appellate counsel was ineffective for (1) filing an inadequate brief with the Third Circuit, and (2) failing to file a petition with the Third Circuit for a rehearing en banc. Kraeger argues that as a result of counsels' failings, either individually or cumulatively, there is a reasonable probability that, but for those errors, the result of his trial would have been different.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1)

4

the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691 (1984). "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001.) Proving such a deficiency "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." *Id*. (quoting *Strickland*, 466 U.S. at 687). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id*. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. It is well-settled that the benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial the result of which is reliable. *Strickland*, 466 U.S. at 687. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id*. at 693. Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id*.

The Supreme Court has noted that application of the *Strickland* standard does not require that the performance prong be addressed first. Rather,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697. Kraeger claims that he was denied the effective assistance of each of his various counsel in multiple respects. The Court will address each of them in turn.

**A. Trial Counsel**

Kraeger asserts a number of complaints against his trial counsel for ineffectiveness: (1) failing to properly cross-examine the Government's witnesses at trial; (2) failing to call an expert witness for the defense; (3) failing to seek the exclusion of "obviously tampered with evidence;" (4) failing to assert bad faith on the part of the officers who conducted the 2009 search; and (5) committing numerous errors regarding the firearms charges against Kraeger.[1] A trial court is not required to "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). "Ordinary errors of judgement or a mistaken choice of strategy are not enough to prove ineffective assistance of counsel." *Strickland*, 466 U.S. at 698.

*1. Alleged Failure of Trial Counsel to Properly Cross-Examine Government Witnesses*

Kraeger first contends that his trial counsel failed to properly cross-examine the Government's witnesses. Specifically, Kraeger claims that trial counsel should have more aggressively cross-examined these witnesses regarding their understanding of what counts as a marijuana "plant,"

---

[1]Kraeger also claims his trial counsel was ineffective for failing to properly challenge either of the two initial search warrants obtained by Pennsylvania State Trooper William Cawley, which led to the charges contained in Count 1. However, since trial counsel could not properly have done so after this issue was already litigated and decided at the trial court level, Kraeger's arguments regarding this will be addressed only in the sections dealing with his suppression hearing and appellate counsel.

whether proper procedures were followed for collecting and documenting evidence, and what happened to a missing video of the 2009 search of Kraeger's home. Kraeger's allegations do not meet the first prong of *Strickland*. Trial counsel vigorously cross-examined multiple government witnesses regarding each of the above issues, especially regarding the identification, counting, and documentation of the marijuana plants. Several instances of this cross-examination are cited in Kraeger's own memorandum in support of the instant motion. (*See, e.g.,* Doc. 286-1, p. 22, 23, 29, and 31-32.) In addition, trial counsel extensively cross-examined Troopers Cawley, Weiss, Hahn, and Eckart as to their methods of counting marijuana plants, highlighting in each case the contention that they did not count the plants with the roots attached. (Doc. 273 p. 69-107, 162-185; Doc. 279 p. 83-117, 160-175.) Trial counsel also cross-examined Troopers Cawley and Hahn about the missing videotape, and emphasized to the jury in her closing arguments that the tape was missing. (Doc. 273 p. 69; Doc. 275 p. 145; Doc. 279 p. 27, 96-98.)

Kraeger appears to take issue with the fact that his trial counsel did not herself point out during cross-examination what he alleges are erroneous understandings of the definition of a marijuana "plant" evinced by the Government's witnesses, as well as the significance of the missing video. However, cross-examination is meant to develop a factual record for the jury, and is not an appropriate time to make arguments regarding how the evidence should be interpreted. (See, e.g., "Differences Between Opening Statements and Closing Arguments, United States Courts, available at http://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/differences ("Only after the jury has seen and heard the factual evidence of the case are the parties allowed to try to persuade them about its overall significance. Closing arguments are the opportunity for each party to remind jurors about key evidence presented and to persuade them to adopt an interpretation favorable to their position.")). Trial counsel appropriately drove home the point regarding the alleged incorrect counting of plants in her closing statement, during which she referred back to the testimony she had elicited regarding this subject. (Doc. 275, p. 139-149.)

Given trial counsel's extensive questioning of government witnesses regarding their understanding of the definition of a marijuana "plant," how those plants were counted and

7

documented, and the alleged disappearance of the missing video, as well as her emphasis on these issues in her closing statement, trial counsel ably met the requirement for reasonable assistance under *Strickland*.

*2. Alleged Ineffectiveness of Trial Counsel for Failure to Call Expert Witness*

Kraeger also asserts that his trial counsel was ineffective for failing to call Dr. George Weiblen as an expert witness in Kraeger's defense. It is far from clear whether Dr. Weiblen's testimony would have contributed to Kraeger's defense. Kraeger claims only that Dr. Weiblen's testimony would have established that the Government's *photographic* evidence did not depict the full 1,079 plants alleged by the Government. However, as the Government correctly notes in its reply to the instant Motion, the photographic evidence submitted at trial was meant to corroborate the eyewitness testimony of the law enforcement officers who participated in the counting and cataloguing of the plants. (Doc. 299, p. 28.) As Dr. Weiblen states in one portion of his report cited by Kraeger, "[i]t was not possible to make an independent count of the numbers of living plants" based on the photographs. (Doc. 286-1, p. 19.) Without being able to make an independent count of his own, Dr. Weiblen's testimony would have been limited to establishing the weaknesses of the Government's photographic evidence. As trial counsel was able to thoroughly and effectively cross-examine the Government's witnesses on this issue, Kraeger was neither given ineffective assistance of counsel nor prejudiced by trial counsel's decision to effect this strategy. *See Reinert v. Larkins*, 379 F. 3d 76, 95 (3d Cir. 2004) (finding no ineffective assistance where counsel thoroughly cross-examined all opposing witnesses regarding issue that would have been subject of expert testimony). Kraeger therefore fails to show he received ineffective assistance of counsel with regard to the proposed expert witness testimony on this issue.

*3. Alleged Ineffectiveness of Trial Counsel for Failure to Seek Exclusion of "Obviously Tampered With Evidence"*

Kraeger next alleges that his trial counsel was ineffective for failure to seek the exclusion of two "obviously tampered with" pieces of evidence. First, Kraeger claims that his counsel should have sought the exclusion of Government Exhibit 28, which shows marijuana plants with an original count of 272 plants crossed out with an updated count of 320 plants. Kraeger's trial counsel previewed this

8

issue in her opening statement and questioned several witnesses about the changed count of plants depicted by this photo. (Doc. 279 at 22:5-14, 161:21-162:23; Doc. 273 at 97:14-99:15, 102:12-103:5, 182:3-6.) This thorough exploration of the issue shows trial counsel was not ineffective with regard to this issue. Kraeger therefore cannot meet the first prong of *Strickland* with regard to this aspect of his trial counsel's performance.

Also in relation to Exhibit 28, Kraeger argues his trial counsel should have questioned the Government's witnesses regarding the identity of the man appearing on the right side of the picture. Although trial counsel appears not to have asked directly about the man's identity, it is unclear what benefit Kraeger could have drawn from his attorney asking this specific question. Had the man been identified, there is no telling whether he would have been the person who conducted the count of plants for that exhibit, whether he would have had any additional information to offer, or whether he might have given additional prejudicial testimony against Kraeger as an eyewitness to his marijuana grow operation. Given the uncertainty of what could result from this line of questioning, trial counsel may reasonably have made the strategic decision that Kraeger's case would benefit more from being able to point out that the video was missing than it would from identifying the man in the photo. Kraeger has also failed to show that he was prejudiced by this decision, since it is unclear what the outcome would have been if his counsel had taken a different approach. Kraeger therefore fails to meet either prong of *Strickland* with regard to this issue.

Second, Kraeger asserts that his trial counsel should have sought the exclusion of Government Exhibits G-139 and G-140. According to Kraeger, Evidence Marker 20, which is depicted in both exhibits, has been moved between G-139 and G-140, although G-140 was "supposed to be just an enlargement of G-139." In G-140, "a clump of stringy material" is visible where no such material is visible in G-139. Kraeger claims that this is important because the law enforcement officers who conducted the search would have known that it was important to show roots in the evidence and that a "subliminal subduction like this would stick in the jury's mind." Kraeger's assertion on this point is simply not plausible. First, just because two photographs depict the same evidence marker does not mean that the Government is claiming they are identical copies of the same photo, with one enlarged

9

to show detail. In the most detailed discussion of this potential issue, Trooper Hahn explained during cross-examination by Kraeger's trial counsel that G-140 "would be the same photograph probably closer – a closer photo of whatever – whoever took the photos what they were trying to show there." (Doc. 273 at 85:2-8.). This does not suggest that the Government is claiming G-140 is an enlarged copy of G-139, but rather that G-140 is a closer shot depicting the same evidence as G-139, as indicated by the inclusion of the same evidence marker. Further, the idea that a jury would see one photograph showing root material and would somehow be subliminally convinced that all of the plants must therefore include root material is not a reasonable assertion. Finally, during the hearing in which G-139 and G-140 were admitted, Kraeger's trial counsel questioned Trooper Cawley about these exhibits and Trooper Cawley stated that G-140 does not depict a root system, undermining Kraeger's claim that the jury would have been prejudiced by seeing a purported root system in this exhibit. Therefore, Kraeger's trial counsel would have had no basis on which to move for exclusion of these exhibits, and Kraeger was not prejudiced by her decision not to. Kraeger fails to meet both prongs of *Strickland* on this claim.

> *4. Alleged Ineffectiveness of Trial Counsel for Failing to Assert Bad Faith on the Part of the Officers who Conducted the 2009 Search of Kraeger's Residence*

Kraeger claims that his trial counsel was ineffective for failing to assert bad faith on the part of the officers who conducted the 2009 search of his residence due to their destruction of the marijuana plants collected there. However, in claiming this, Kraeger ignores that this issue was raised in one of several motions by his suppression counsel prior to the suppression hearing, and was rejected by the Court. (*See* Doc. 53; Doc. 75, p. 25-31.) Kraeger's trial counsel was not ineffective for failing to revisit an issue that had already been decided at the trial court level, and Kraeger was not prejudiced by this failure because the issue was raised on appeal by his appellate counsel and the Third Circuit ruled against Kraeger. Therefore, Kraeger fails to meet both the first and second prong of *Strickland* on this point.

> *5. Alleged Ineffectiveness of Trial Counsel for Committing Ten Enumerated Errors Regarding Firearms Evidence, and for Failing to Submit Evidence in Her Possession*

On September 24, 2013, the Government filed a superseding indictment adding two charges relating to Kraeger's possession of three firearms found during the 2009 search of his residence. Kraeger alleges that his trial counsel was ineffective for committing ten enumerated errors in challenging these two firearms counts against him. This list of errors essentially boils down to the claims that trial counsel (1) failed to adequately prepare for trial regarding the firearms charges (and consequently failed to properly challenge the Government's evidence relating to the firearms charges at trial); (2) introduced unhelpful evidence regarding the presence of firearms in Kraeger's house; and (3) failed to introduce evidence in her possession pertaining to the firearms charges. As discussed below, Kraeger also fails on these claims under both prongs of *Strickland*.

Kraeger first claims that, although trial counsel sought and obtained a continuance to prepare a defense on these charges, she did not use this time to conduct additional discovery or prepare for trial and was therefore ineffective in her representation at trial. In fact, trial counsel made multiple pre-trial discovery motions after the superseding indictment was filed but before filing the motion to continue the trial. Among other things, these motions requested that the Government be compelled to disclose any witnesses and the details of their statements under Federal Rule of Evidence 807, statements of witnesses under Federal Rule of Criminal Procedure 26.2, and transcripts of grand jury testimony (*See* Docs. 157, 159, and 160, respectively). Each of these motions was denied. In addition, trial counsel thoroughly cross-examined government witnesses at trial regarding the guns found in Kraeger's home, including cross-examination aimed at raising the possibility that someone had brought the guns from the garage rather than the house. (*See* Docs. 273, 274, and 279.) Further, given the slim margin by which the Government's alleged plant count exceeded the 1,000-plant threshold which triggered an additional five year mandatory minimum, it would have been perfectly reasonable for Kraeger's attorney to focus on challenging law enforcement's counting and documentation methods rather than lingering on the comparatively clear-cut evidence that the firearms were found in the house. Given trial counsel's numerous motions following the superseding indictment, her thorough cross-examination on the issue of the guns found in Kraeger's house, and the apparent reasonableness of pursuing a strategy focused on challenging the Government's counting procedures,

counsel's efforts to prepare for trial fell comfortably within the "wide range of reasonable professional assistance" deemed acceptable under the first prong of *Strickland*.

Kraeger also claims that his trial counsel was ineffective because she asked a question which he claims introduced unfavorable evidence against him relating to the firearms charges. While questioning Michael Saylor, the owner of one of the three guns found on the property, trial counsel asked "[b]esides your rifle, did you ever see any other rifles on the premises?" and Mr. Saylor answered in the affirmative. (Doc. 279 at 113:20-22.) Kraeger was not prejudiced by this testimony because there was already ample evidence of firearms on the premises, including testimony by the Government's witnesses and the property records recorded on the day of the search. Mr. Saylor's testimony that he had seen firearms on the premises did not undermine Kraeger's trial strategy of raising doubts about *where* the firearms had been found, and did not result in any additional prejudice to Kraeger in light of the substantial evidence of firearms on the property that was already in the record. Therefore, Kraeger fails to meet the second prong of *Strickland* in regards to this issue.

Finally, Kraeger claims that his trial counsel was ineffective for failing to introduce two pieces of evidence in her possession that would have created a reasonable doubt regarding the two firearms charges against him. The first piece of evidence was a purchase receipt for the Mossburg shotgun, which showed that Kraeger's son, Daniel, had purchased the gun. Trial counsel's failure to introduce this evidence did not prejudice Kraeger, since actual ownership is irrelevant to the charge of possession of a firearm in furtherance of a drug trafficking crime. *See U.S. v. Hornbuckle*, 427 Fed.Appx. 172, 177 (3d Cir. 2011). Therefore, on this point, Kraeger fails the second prong of the *Strickland* analysis.

The second piece of evidence Kraeger alleges his trial counsel should have introduced was a prescription for Marional, a drug which contains pure THC in liquid pill form. Kraeger asserts that the introduction of this evidence would have shown that he was a legal user of THC and therefore could have created reasonable doubt with regard to Count 4, possession of a firearm by an unlawful user of controlled substances. However, multiple witnesses testified that they used marijuana and cocaine with Kraeger, and the Government offered evidence of cocaine found in his bedroom. (*See,*

*e.g.*, Doc. 273 at 136:2-9; Doc. 274 at 56:22-57:2, 69:6-24, 83:2-6, 85:4-9, 85:22-86:9; Doc. 279 at 100:13-21.) Since the jury found this sufficient to conclude that Kraeger was an unlawful user of drugs, introducing the prescription for Marional would not have made a difference in the outcome of the case. Kraeger therefore fails to meet the second prong of *Strickland*, since he was not prejudiced by trial counsel's failure to introduce the prescription.

### B. Suppression Hearing Counsel

Kraeger alleges that his suppression counsel was ineffective for (1) failing to properly challenge the two search warrants that led to his arrest and prosecution under Pennsylvania state law in 2009; (2) failing to properly call witnesses, conduct cross-examination, or object to a "blatantly false and prejudicial statement" by the prosecutor during the August 23, 2012 suppression hearing; and (3) failing to immediately appeal the District Court's denial of his multiple motions to suppress evidence and motion to continue the suppression hearing.

*1. Alleged Failure of Kraeger's Suppression Counsel to Properly Challenge Search Warrants*

Kraeger first alleges that his suppression counsel failed to properly challenge either of the two initial search warrants obtained by Pennsylvania state police, which led to the charges contained in Count 1. Kraeger's suppression counsel thoroughly briefed these issues in several motions to suppress evidence filed before trial,[2] and was successful enough in briefing the issues to secure a suppression hearing. In multiple briefs, Kraeger's suppression counsel made all of the same general assertions of fact that Kraeger makes in his instant motion.[3] Kraeger cannot demonstrate that his counsel was ineffective regarding the suppression issues because counsel's performance did not fall below an

---

[2]These included a motion to *Suppress for Destruction of Marijuana Plants* (Doc. 53); a motion to suppress *Unlawful Search Occurring May 2009* (Doc. 55); a motion to suppress *Unlawful Search Occurring November 2010* (Doc. 56); and a motion to *Bifurcate Trial on Counts One and Two* (Doc. 57).

[3] In particular, the Court notes that Kraeger's statement in his § 2255 motion that "the only time any of the Petitioner's attorneys addressed the impossibility of the CI's observing the marijuana grow was at a state level suppression hearing in Pike County, Pennsylvania" is incorrect: this was pointed out in Kraeger's *Motion to Suppress Unlawful Search Occurring May 2009*. (Doc. 55, p. 2-3.)

13

objective standard of reasonableness and Kraeger was not prejudiced as a result. Significantly, Kraeger was not prejudiced by counsel's performance because, as the Court stated in denying his motions to suppress search results, the challenged warrants were supported by probable cause.

### 2. *Alleged Ineffectiveness of Counsel at August 23, 2012 Suppression Hearing*

Kraeger asserts that his suppression counsel was ineffective at the August 23, 2012 suppression hearing because counsel failed to (1) call Trooper Cawley as a witness at the hearing, (2) properly cross-examine Agent Sciarillo, and (3) object to a "blatantly false and prejudicial statement" by the prosecutor. Kraeger's first two alleged reasons for ineffectiveness cannot meet the *Strickland* test because, as stated in the Court's memorandum following the suppression hearing, probable cause existed for the November 4, 2010 search warrant even if all challenged information were excised, including the results of Trooper Hester's search of the smartphone. (Doc. 88, p. 6-7.) In other words, in analyzing the probable cause supporting the November 4, 2010 search warrant, the Court looked at the facts as if the best possible scenario for Kraeger had happened at the suppression hearing. As a result, Kraeger is not able to show that he was prejudiced by the alleged failure of his suppression counsel to call Trooper Cawley as a witness or properly cross-examine Agent Sciarillo, and he therefore cannot meet the second prong of *Strickland*.

Kraeger further asserts that his suppression counsel was ineffective for failing to object to a "blatantly false and prejudicial statement" by the prosecutor during the suppression hearing. The statement, as excerpted in Kraeger's § 2255 motion, was that Trooper Hester "was astute enough to do only a cursory search and then she sought and obtained another search warrant for that cell phone . . . So they are trained to at a minimum put the phone in an airplane mode so nothing can be lost." Kraeger asserts this amounts to the prosecutor claiming that all Trooper Hester did in her initial search was to put the phone in airplane mode. A more complete excerpt of the prosecutor's statement contradicts this interpretation:

> If you look at Trooper Hester's affidavit, she said, I am going to – I am going to look at electronic media in the phone. She asked for permission from the Court to do that. She was granted that permission. She was astute enough to do only a cursory search, and then she sought and obtained another search warrant for that cell phone. And as Agent Sciarillo said, they are trained – cell phones being inherently mobile, being

14

> inherently – the loss of information is – can occur at any moment. So they are trained to at a minimum put the phone in an airplane mode so nothing can be lost, information can't be lost.

(Doc. 87 at 53:21-54:6.) Rather than claiming Trooper Hester only put the cell phone on airplane mode, the prosecutor was explaining to the Court that Trooper Hester had sought and obtained permission to search the phone in her initial warrant, and further that the minimum officers are trained to do is to put the cell phone in airplane mode to preserve any data. Kraeger's characterization of this statement as claiming that Trooper Hester's initial search of the phone was limited to putting the phone in airplane mode is inaccurate. Further, the prosecutor was correct that Trooper Hester's first search warrant requested permission to search the phone. Trooper Hester's affidavit in support of the search warrant reads, in part, "I am aware that there is at least one cell phone within the vehicle [...] This writer would request the Honorable Court to authorize me to examine the telephone(s) and record any of the data such as names, messages and/or telephone numbers that are stored additionally."(Doc. 66-1.) Given this perfectly reasonable statement by the prosecutor, Kraeger's suppression counsel would have had no reason to object, and his failure to do so therefore fails to fall below a reasonable standard of assistance as required by the first prong of *Strickland*.[4]

### 3. Alleged Ineffectiveness of Counsel for Failure to File Appeals

Finally, Kraeger claims his suppression counsel was ineffective for failing to immediately appeal the District Court's denial of his multiple motions to suppress evidence and motion to continue the suppression hearing. District court decisions denying motions to suppress evidence are not immediately appealable as collateral orders, because a motion to suppress "presents an issue that is involved in and will be part of a criminal prosecution in process at the time the order is issued." *U.S. v. Williams*, 413 F.3d 347, 355 (3d Cir. 2005) (quoting *DiBella v. United States*, 369 U.S. 121, 127 (1962)). For the same reason, a district court order denying a motion to continue a suppression hearing

---

[4]Since, at the suppression hearing and in the Court's subsequent memorandum, it was assumed for purposes of evaluating the lawfulness of the search of Daniel Kraeger's cell phone that Kraeger had standing to challenge such search, the Court will not here address Kraeger's arguments regarding his standing. (*See* Doc. 75, p. 19 n. 2.)

15

is also not appealable until after the case has been decided at the district court level. *See Scholl v. Felmont Oil Corp.*, 327 F.2d 697 (6th Cir. 1964). In other words, the appropriate time to appeal a district court's order denying a motion to suppress evidence or to continue a suppression hearing is during the appeal of the outcome of the case. Kraeger's counsel did not fail to meet a reasonable standard of assistance by not filing immediate appeals of these decisions because Kraeger had no right to such an appeal. Kraeger therefore fails the first prong of *Strickland* with respect to this argument.

**C. Appellate Counsel**

Finally, Kraeger alleges he received ineffective assistance from his appellate counsel. In support of this argument, Kraeger points to the brief appellate counsel filed with the Third Circuit, which he claims is inadequate, as well as appellate counsel's failure to file a petition with the Third Circuit for a rehearing en banc. Claims of ineffective assistance of counsel on appeal are also judged using the *Strickland* test. *See Echols v. Ricci*, 492 Fed.Appx. 301 (3d Cir. 2012) (citing *Evitts v. Lucey*, 469 U.S. 387 (1985)).

*1. Appellate Counsel's Brief*

Appellate counsel's brief was well within the standard for reasonable assistance under *Strickland*. "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). An indigent defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The emails submitted by Kraeger suggest that he and appellate counsel discussed the issues Kraeger felt were important, and that appellate counsel was familiar with the record regarding the suppression hearing and trial. (Doc. 286-2, Ex. T.) Kraeger's appellate counsel appears to have selected the strongest elements of Kraeger's case to highlight in his brief to the Third Circuit, which is a reasonable and effective strategy for appellate advocacy. Appellate

16

counsel briefed at length the issue of suppression of evidence, arguing that law enforcement officers destroyed marijuana plants in bad faith, that the warrant authorizing the May 2009 search of Kraeger's residence lacked probable cause, and that the affidavit in support of the warrant authorizing the November 2010 search of Kraeger's residence contained false statements and/or omissions. Appellate counsel further argued that there was insufficient evidence to support Kraeger's conviction in the District Court, highlighting in particular the criticisms initially offered by Kraeger at trial regarding the officers' understanding of what constitutes a marijuana "plant" and their methods of counting such plants.

Although Kraeger takes issue with the number of pages appellate counsel devoted to arguing the sufficiency of the evidence, there is no evidence that a longer section on this subject would have more effectively conveyed the point appellate counsel was making. In addition, as Kraeger notes in his instant motion, his "trial lasted five days and there are over 200 documents and/or pictures entered into evidence." (Doc. 286-1 at 71.) Given the amount and weight of evidence offered at trial, it was sound strategy for appellate counsel to focus succinctly on Kraeger's strongest point in this regard (casting doubt on the plant counting process) and to devote the bulk of his limited page count to arguing the suppression of evidence points, which he may reasonably have concluded would have a higher likelihood of success on appeal. Similarly, although appellate counsel devoted only a single sentence to the firearms charges, it would have been a reasonable strategy to focus on attacking the underlying charges (Kraeger's preferred trial strategy), which, if successful, would have caused the firearms charges to be thrown out as well. Appellate counsel reasonably allocated his limited space in briefing the issues on appeal, and Kraeger therefore fails to meet the first prong of *Strickland*.[5]

*2. Rule 35 Motion*

Kraeger last takes issue with appellate counsel's failure to file a petition for rehearing en banc under Federal Rule of Appellate Procedure 35 ("Rule 35"). Rule 35(a) states "An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless (1) en banc consideration is

---

[5]To the extent Kraeger argues that counsel was ineffective for failing to withdraw from representing him so that these issues could be raised by Kraeger himself, that argument also fails for these same reasons.

17

necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance." It is within appellate counsel's professional judgment to decide whether a petition for such a hearing is warranted. *See United States v. Coney*, 120 F.3d 26, 27-28 (3d Cir. 1997) ("[C]ounsel, having appropriately briefed and argued an appeal, is not under an obligation to file a petition for rehearing or rehearing en banc. [...] The determination whether to file rests in the sound professional judgment of the attorney in light of all circumstances"). Further, Local Appellate Rule 35.4 cautions counsel against filing unwarranted petitions for rehearing en banc:

> As noted in FRAP 35, en banc hearing or rehearing of appeals is not favored. Counsel have a duty to the court commensurate with that owed their clients to read with attention and observe with restraint the required statement for rehearing en banc set forth in 3d Cir. L.A.R. 35.1. Counsel are reminded that in every case the duty of counsel is fully discharged without filing a petition for rehearing en banc unless the case meets the rigorous requirements of FRAP 35 and 3d Cir. L.A.R. 35.1.

Kraeger cannot show that such a motion would likely have been granted, given the strength of the Government's evidence at trial, the District Court's denial of the post-trial motion for acquittal, and the Third Circuit finding the evidence sufficient to sustain his convictions. Considering the low chance of success on such a motion, counsel was not ineffective for deciding not to file it, and Kraeger cannot show he was prejudiced by this decision. Kraeger therefore fails to meet both *Strickland* prongs here.

### *3. Abuse of Discretion by District Court in Denying Motion for Continuance*

Finally, in an amendment to his original § 2255 motion, Kraeger asserts that the District Court abused its discretion in denying his request to continue his suppression hearing. Since this issue was not raised on appeal, the Court will construe this as an argument that Kraeger's appellate counsel was ineffective for not raising the issue on appeal. The decision whether to grant or deny a continuance is "a matter traditionally within the discretion of the trial judge." *Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003). "[O]nly an unreasonable and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). In this case, the motion to continue the suppression hearing was denied during a teleconference with both parties, but the Court noted that if it became apparent during the hearing that Trooper Hester's testimony would be

necessary, another hearing could be scheduled in order for her testimony to be heard. During the suppression hearing on August 23, 2012, suppression counsel aggressively cross-examined Agent Sciarillo at length regarding a range of issues relating to the search warrant, and at the end of the hearing suppression counsel agreed that Trooper Hester's testimony would not be necessary. (Doc. 87 at 54:15-18.) Given the thorough airing of Kraeger's concerns at the suppression hearing, and the wide discretion afforded trial courts in granting or denying motions to continue, appellate counsel cannot be considered ineffective for opting not to brief this issue on appeal. In any case, as discussed in Section B.2, *supra*, Kraeger was not prejudiced by the outcome of the Court's decision not to continue the suppression hearing because the Court excised the challenged information when it considered the validity of the search warrant, so Kraeger cannot meet the second prong of *Strickland* either.

**IV. CONCLUSION**

For the above stated reasons, Kraeger's motion will be denied. Furthermore, in proceedings brought pursuant to 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." Restated, a COA should not be issued unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As reasonable jurists would not disagree with the resolution of Kraeger's motion, a COA will not issue. Further, because the record demonstrates conclusively that Kraeger is not entitled to relief, a hearing will not be granted.

An appropriate order follows.

December 19, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge